## Penfield's Trust

*Pepper, Bodine & Stokes*, for Marie Louise Meirs, C. Newbold Taylor, exec., Fanny Cox Weightman Worral, Martha Thomas Rogers Weightman Watkins, Bertha Weightman Norton Jacobs, Nathaniel Read Norton, Jr., William Strange Norton, II, Louise W. Strawbridge Hunsicker, John Strawbridge, Jr., George Strawbridge, Perry Benson and Richard Benson.

*Sheldon F. Potter*, for Provident Trust Co.

*Joseph Carson*, p.p.

*Morgan, Lewis & Bockius*, for Joseph Carson and Fidelity Phila. Trust Co.

*R. Brigham; Ballard, Spahr, Andrews & Ingersoll*, for Chestnut Hill Hospital.

PARRY, J., November 14, 1946.—The Provident Trust Company of Philadelphia and Joseph Carson, surviving trustees, have filed their fifteenth and final account of a trust under deed of Anne W. Penfield dated June 8, 1923, which has now terminated. The only question raised at the audit concerns the distribution of the balance now remaining in the trust fund, which is claimed by former beneficiaries of the trust, by the co-executor of the settlor's estate and by the Chestnut Hill Hospital, a charity selected by the trustees pursuant to certain provisions in the deed of trust.

From the stipulation of facts submitted by counsel I make the following

### Findings of fact

1. On June 8, 1923, Anne W. Penfield executed and delivered a certain deed of trust for the benefit of sixteen named great nieces and great nephews, which is here incorporated by reference to the copy thereof contained in the stipulation of facts filed by counsel dated June 24, 1946.

2. Four of the named beneficiaries reached the age of 30 on or before August 25, 1928, and their respective shares were paid over to them as they fell due.

3. Jarvis Meirs, a named beneficiary, died on June 3, 1930, not having attained the age of 30 and without leaving issue surviving him. No account was filed by the trustees at the time of his death but in the petition for confirmation of the fifth account filed by the trustees upon another beneficiary reaching the age of 30 on September 9, 1934, it was stated:

"That Jarvis Meirs, one of the beneficiaries in said deed of trust, died June 3, 1930, unmarried and without issue, not having attained the age of thirty (30) years, whereupon in accordance with the provision of

said deed of trust (see page 4 of the deed) the share held for the said Jarvis Meirs went to augment the balance held in trust for the surviving eleven beneficiaries."

4. Notices have never been sent to any of the parties in which it was indicated that there might be a question in connection with the distributive share from which Jarvis Meirs enjoyed the income and any question which might arise in connection with the distribution of the share of Jarvis Meirs has not heretofore been raised or passed upon.

5. Ten of the other eleven beneficiaries reached the age of 30 on or before November 16, 1941, and their respective shares were paid over to them by the trustees as they fell due.

6. Peter Benson, the youngest and last of the named beneficiaries, died without issue on September 11, 1945, not having attained the age of 30 years, at which time income accruing to that date amounting to $433.34 was due him.

7. The following named beneficiaries have each received his or her distributive share of income and principal due upon attaining the age of 30 years: William Weightman Meirs; Marie Louise Faries Tutein; Emma Faries Oller; Anne M. Taylor, since deceased; Fanny Cox Weightman Worral; Louise W. Strawbridge Hunsicker; Bertha Weightman Norton Jacobs; Martha Thomas Rogers Weightman Watkins; John Strawbridge, Jr.; Nathaniel Read Norton, Jr.; Perry Benson; George Strawbridge; William Strange Norton, 2nd; Richard Benson.

## Discussion

The settlor, Anne W. Penfield, on June 8, 1923, executed an irrevocable deed inter vivos, creating a trust for the benefit of sixteen named great nieces and great nephews, directing her trustees to divide the

income among them and as each reached the age of 30 years to distribute to him or to her the share of principal upon which he or she had been receiving the income. In case of the death of a beneficiary under the age of 30 his or her issue are substituted as beneficiaries, to receive their share of principal on reaching the age of 21. If no such issue of a deceased beneficiary attain the age of 21 the deed directs that the share previously held for the deceased great nephew or great niece "shall go to augment the respective shares of the trust estate still held for the other and remaining great nieces and great nephews and issue as aforesaid of deceased great nieces and great nephews . . .".

Finally the deed provides that if all the named beneficiaries die under 30 without leaving issue who shall attain the age of 21 years, the trustees shall assign and transfer the principal and all unpaid income of the trust estate to such charitable organizations and in such proportions as they may agree upon.

Fourteen of the sixteen named beneficiaries reached the age of 30 years and received their respective shares of principal. One, Jarvis Meirs, died in 1930 under the age of 30 and without issue whereupon his share of principal was used to augment the shares still held in the trust but no part of it was distributed to four beneficiaries who had previously reached the age of 30 years and had been paid off.

In 1945 Peter Benson, the last beneficiary, died under the age of 30 and without issue. All other beneficiaries having been paid off and no shares being "still held" in the trust estate, the question is what disposition should be made of the balance of principal on which he had been receiving the entire income at the time of his death.

Pointing to the provision for a gift over to charity, the trustees have selected the Chestnut Hill Hospital

and propose distribution to it. This proposal is disputed on the one hand by the co-executor of the settlor's estate claiming a reverter to the estate and on the other by the settlor's great nephews and great nieces who were beneficiaries of the trust, claiming that it should be divided among them.

I have no hesitation in reaching the conclusion that the contingency upon which the charitable gift depends did not occur: Not all but only two of the sixteen great nephews and great nieces named as beneficiaries of the trust died without issue under the age of 30. To construe all to mean any as urged by the accountant would be an unwarranted alteration of the deed, which is perfectly clear in this respect. Indeed such alteration would immediately lead to confusion for in case of the death of any but the last remaining beneficiary it would conflict with the express provision for the increase of the shares still held in trust for remaining beneficiaries.

The contest between the surviving great nephews and great nieces, and the settlor's estate presents greater difficulty. The former invoke the principle that a gift over (here to charity) in case of the death of all of a number of income beneficiaries implies a gift in remainder to them (or their issue if so provided) if they in fact survive. The asserted obstacle to this construction is the express provision that the shares of great nephews and great nieces dying under 30 without issue who reach 21 "shall go to augment the respective shares of the trust estate still held for the other and remaining great nieces and great nephews and issue as aforesaid. . . .". It is said that as no other shares are still held in the trust and there is no express gift in remainder to great nephews and great nieces the balance of principal must revert to the settlor's estate.

The test of whether cross-remainders will be implied seems to resolve itself into the determination of the question whether the settlor intended to dispose of the estate as a whole. While I have no doubt that she did so intend, nevertheless remainders cannot be implied in favor of the surviving beneficiaries if they are excluded in terms from further participation in the settlor's bounty.

Wagner's Estate, 80 Pa. Superior Ct. 184, relied on to support the contention that there is a reverter, I think is really not in point for, although the language there and here is quite similar, the facts are not. There it was provided that the share in question should be held for "the use of such persons and for such estates as the remaining shares shall then be holden by the said trustees". Some of these persons were still surviving and, it was held, were entitled to take to the exclusion of the issue of other named beneficiaries whose shares had already been distributed. The court said the quoted words were controlling and manifested a clear intent to exclude the issue and appointees under the will of the beneficiary first dying from participation in the share of one dying subsequently.

Although, in the case at bar, the beneficiaries whose shares have been distributed are clearly excluded as long as there are shares remaining in the trust to be augmented, there are none such now and a different question is presented from that considered in Wagner's Estate.

As I do not think the language relied upon is applicable here, it remains to consider whether the express provision for the augmenting of shares under certain circumstances necessarily excludes a different disposition of principal to great nieces and great nephews under other circumstances.

The settlor obviously intended to utterly divest herself of the property irrevocably transferred to the trust and, having no issue of her own, to divide it among her great nephews and great nieces, or their issue, who survived to specified ages, they being the natural objects of her bounty. In the unlikely event that none of them survived to such ages she still guarded against a reverter by directing her trustees to select a charity to receive the money. Therefore, if the omission to provide for the exact contingency that has occurred can properly be supplied, it ought to be done as remainders arise by implication to fill up an hiatus in the limitation which seems from the context to have been unintentional.

As pointed out by counsel, the question of implied gifts was considered by this court in In re Scott, 22 D. & C. 351 (affirmed in Scott's Trust, 322 Pa. 1). At page 358 we stated:

"Clayton's Estate, 302 Pa. 468, Beilstein v. Beilstein, 194 Pa. 152 and Lippincott's Estate, 276 Pa. 283 apply the rule that where there is a gift over in the event of there being no persons of a specified class, and nothing is said as to what shall be done if there are such persons, the law will imply a gift to them if in existence at the time the gift over is to take effect."

Reference to the text of Jarman on Wills and the cases just cited will show that the implication does not always depend upon the preceding gift of income being to a class but may be drawn when the gift is to a number of persons by name. As indicated in the Scott Case (p. 358) French's Estate, 292 Pa. 37, cited by counsel for the trustees is not in point. In that case there was no gift over on which an implied gift of the share of income in dispute could be based, and the remaining income beneficiaries could claim it only on the assumption that the gift was to a class, whereas it was made nominatim.

In the present case the settlor directed a gift over of the principal of the trust to charity only in case all of her great nephews and great nieces died under the age of 30, and their issue all died under 21. From this it is urged we should imply a gift of remainders and cross-remainders of the principal to the great nephews and great nieces who attain the age of 30.

Now such a gift is in part expressly provided for in the direction for distribution to each at age 30 of the share of principal on which he or she has been receiving the income and it is in part modified by the direction for augmenting the shares remaining in the trust; but it applies without modification to the share now to be distributed. Therefore on attaining the age of 30 years each great nephew or great niece acquired the right to be paid his or her own share of principal absolutely and also acquired a vested interest in the remainder of the trust fund subject to diminution by other great nephews and great nieces attaining the age of 30 years (or the substitution of their issue as provided by the deed) and also subject to diminution by reason of the direction for augmenting shares.

I therefore reach the conclusion that the balance of principal with accrued income, less proper deductions, should be divided into 14 equal parts, one to be distributed to each of the thirteen great nieces and great nephews (all over the age of 30) now living and one to the Executor of the Estate of Anne M. Taylor, a great niece who died July 3, 1930, when about thirty-two years of age. Distribution must be made to the Estate of Anne M. Taylor, rather than to her issue, as the substitution of issue is provided for only in case of the death of a great nephew or great niece under the age of 30 years.

Nothing in this interpretation affects the action of the trustees in retaining the share of Jarvis Meirs

to augment the other shares still held in trust at the time of his death. In so doing they followed the expressed directions of the settlor, who plainly was not concerned to secure equality of distribution: See Wagner's Estate, supra.

## Conclusions of law

1. Under the terms of the deed of trust and the gifts to be implied therefrom the balance of principal in the trust and the income accruing since the death of Peter Benson is presently distributable in 14 equal shares to the thirteen surviving great nephews and great nieces of the settlor named as beneficiaries of the trust, and the personal representative of a named great niece who died after attaining the age of 30 years.

## Decree

1. That the said account stated to November 26, 1945, is hereby approved and confirmed.

2. That the income accrued to September 11, 1945, amounting to $433.34, be awarded to Edwin N. Benson, administrator of the Estate of Peter Benson, deceased.

3. That the balance shown for distribution with all subsequent accruals, after the deduction of the commissions, counsel fees and costs stated in the account, be awarded to the persons and in the proportions set forth in the adjudication.

The prothonotary is directed to enter a decree nisi and to notify the parties of the filing of this adjudication and unless exceptions are filed thereto within ten days to enter a final decree in accordance therewith.